FILED

**August 23, 2017**

TN COURT OF
WORKERS' COMPENSATION
CLAIMS

Time 1:15 PM



## TENNESSEE BUREAU OF WORKERS' COMPENSATION
## IN THE COURT OF WORKERS' COMPENSATION CLAIMS
## AT MURFREESBORO

| | | |
|---|---|---|
| **TROY J. BARLOW,** | ) | **Docket No. 2017-05-0387** |
| **Employee,** | ) | |
| **v.** | ) | |
| **THE CAR PEOPLE, LLC,** | ) | **State File No. 25036-2017** |
| **Employer,** | ) | |
| **And** | ) | |
| **PLAZA INS. CO.,** | ) | **Judge Dale Tipps** |
| **Insurance Carrier.** | ) | |
| | ) | |

## EXPEDITED HEARING ORDER GRANTING BENEFITS

This matter came before the undersigned workers' compensation judge on August 16, 2017, for an Expedited Hearing. The present focus of this case and the central legal issue is whether Mr. Barlow is likely to establish at a hearing on the merits that he is entitled to temporary disability benefits.[1] For the reasons set forth below, the Court holds Mr. Barlow is likely to meet this burden and is entitled to temporary disability benefits.

### History of Claim

Mr. Barlow, an automotive mechanic, injured his left shoulder while lifting a large trailer wheel at work on March 16, 2017. With his employer's permission, Mr. Barlow went to the emergency room the same day. The ER physician took Mr. Barlow off work for two days, allowing him to resume normal duty as of Saturday, March 18. Mr. Barlow was not scheduled to work that weekend, so he returned to work on Monday, March 20. The pain in his shoulder was so severe that he was unable to do his job, and he went home.

The Car People, LLC (TCP) provided a panel of medical providers, from which Mr. Barlow selected Concentra Medical Centers. He treated at Concentra six times between March 22 and April 20, receiving temporary work restrictions at each visit. These restrictions varied somewhat, but generally limited the use of his left arm with specific limitations on lifting, pulling, and reaching.

---

[1] The Car People, LLC did not challenge the compensability of Mr. Barlow's injury at the Expedited Hearing.

TCP accommodated Mr. Barlow's restrictions for three weeks by allowing him to perform vehicle inspections and repairs that required little or no left-arm involvement. Whenever an assigned job exceeded his restrictions, such as removing wheels and tires from a car, Mr. Barlow could ask someone in the shop for assistance such as Mr. Pace, the manager, or Mark, the other technician in the shop. Mr. Barlow's eighteen-year-old son, Cameron, would also sometimes assist his father with these heavier tasks. Although Cameron was not a TCP employee, he often came to work with his father to learn about being a mechanic. Pay records showed that Mr. Barlow earned $2,452.50 while working light duty from March 26 through April 14.

Mr. Barlow testified that he arrived at work following an authorized medical appointment on April 14, and Mr. Pace told him he was being written up as a "no call, no show." Later that afternoon, Mr. Pace told him to perform a thirty-point inspection and brake job. The only other employee, Mark, was out to lunch, so Mr. Barlow was unable to remove the wheels without violating his restrictions. He asked Mr. Pace for help, but Mr. Pace said he was busy with customers. Mr. Barlow told him he could not do the assignment without his help. Mr. Pace later brought out the phone and told him Mr. Isaac, the owner of TCP, wanted to speak to him.

Mr. Isaac told Mr. Barlow that he needed to take the wheels off the car. When Mr. Barlow said he needed help to do that, Mr. Isaac suggested he try standing on one leg and using his other knee to help steady and lift the tire. Mr. Barlow said he would not risk hurting himself further by doing that. An hour or so later, Mr. Isaac came to the shop. He accused Mr. Barlow of hanging up on him, which Mr. Barlow denied. Mr. Isaac told Mr. Barlow that if he would not do the job, he needed to leave.

On cross-examination, Mr. Barlow confirmed that the first part of the assignment – the thirty-point inspection – was within his restrictions. Asked why he refused to do the inspection, he explained that he never refused. Instead, he took the car for a drive, which is the first step in the process. When he brought it back, he could not pull it in the garage because the car had a low ride height. In order to put it on the only lift available, Mr. Barlow needed to raise the car a little bit by hand to slide the lift arms under it. This would have been impossible using just one hand.

TCP terminated Mr. Barlow's employment that same day. The reason on the Employee Exit/Termination Sheet was: "Insubordination. Employee Troy Barlow refused to do a complimentary inspection & brake job."

Mr. Isaac gave his own version of the events before the termination. He said he received a phone call from Mr. Pace and Mr. Barlow. Mr. Barlow told him he could not take the tires off to do a brake job. Mr. Isaac asked him why he couldn't get help from another employee, but he did not testify as to Mr. Barlow's response. The phone call

2

ended when Mr. Barlow hung up on him. As a result, Mr. Isaac assumed that Mr. Barlow quit his job. Mr. Isaac then went to the store to do the brake job himself and found Mr. Barlow still there. He asked why Mr. Barlow did not want to do the job. Mr. Barlow said he could not and "that he wasn't going to do anything," so Mr. Isaac fired him.

Mr. Isaac said that Mr. Barlow was able to do many of his work tasks without assistance. This included vehicle inspections such as the one Mr. Barlow refused to complete. Although Mr. Isaac acknowledged Mr. Barlow required help to remove the tires for an inspection or brake job, other people were present to help him. On cross-examination, Mr. Isaac admitted Mr. Barlow told him he could not take the wheels off without violating his restrictions. Mr. Isaac also acknowledged that he did not offer to take the tires off nor ask anyone else to help Mr. Barlow.

TCP provided no temporary disability benefits to Mr. Barlow, either before or after his termination. It continued to provide treatment, including surgery for a torn rotator cuff on August 3. Mr. Barlow testified he has been unable to work anywhere since leaving TCP.

Mr. Barlow requested temporary partial disability (TPD) benefits from date of his termination, to November 18, 2016, through the date of his shoulder surgery. He also sought temporary total disability (TTD) benefits for the day after his accident and the period of total disability following his shoulder surgery. The parties stipulated to Mr. Barlow's average weekly wage at $774.40 and his compensation rate at $516.27. Mr. Barlow also requested attorney fees and a penalty for unpaid temporary disability benefits.

TPC countered that Mr. Barlow failed to meet his burden of proving he is entitled to any temporary disability benefits. It contended he worked his regular work hours before his termination and is thus ineligible for TPD benefits for that period. As for the period after Mr. Barlow's termination, TPC argued his refusal to perform his assigned work on April 14 was not a good-faith effort to return to work.

### Findings of Fact and Conclusions of Law

Because this case is in a posture of an Expedited Hearing, Mr. Barlow need not prove every element of his claim by a preponderance of the evidence in order to obtain relief. Instead, he must come forward with sufficient evidence from which this Court might determine he is likely to prevail at a hearing on the merits. *See* Tenn. Code Ann. § 50-6-239(d)(1) (2016); *McCord v. Advantage Human Resourcing*, 2015 TN Wrk. Comp. App. Bd. LEXIS 6, at \*7-8, 9 (Mar. 27, 2015).

An injured worker is eligible for TTD benefits if: (1) the worker became disabled from working due to a compensable injury; (2) there is a causal connection between the injury and the inability to work; and (3) the worker established the duration of the period of disability. *Jones v. Crencor Leasing and Sales*, TN Wrk. Comp. App. Bd. LEXIS 48, at *7 (Dec. 11, 2015). Per the emergency department restrictions, Mr. Barlow was taken completely off work for the day after his injury. This was the only date of total disability until his rotator-cuff surgery, at which time Dr. Jordan took him off work from August 3 through August 16. Because no one disputes the causal connection between these periods of disability, Mr. Barlow is likely to prove he is entitled to fifteen days of TTD benefits totaling $1,106.29.

Mr. Barlow also seeks TPD benefits. This is a category of vocational disability distinct from temporary total disability and is available when the temporary disability is not total. *See* Tenn. Code Ann. § 50-6-207(2) (2016). Specifically, "[t]emporary partial disability refers to the time, if any, during which the injured employee is able to resume some gainful employment but has not reached maximum recovery." *Mace v. Express Servs., Inc.,* 2015 TN Wrk. Comp. App. Bd. LEXIS 49, at *8 (Dec. 11, 2015).

Mr. Barlow worked light duty per the Concentra restrictions between March 22 and April 14. During that twenty-four-day period, he earned wages totaling $2,827.50. This equals an average daily gross pay of $117.81 or $824.69 per week. As his actual average weekly earnings were higher than the stipulated average weekly wage of $774.40, he appears unlikely to prevail at a hearing on the merits on his claim for TPD benefits for this period.

This leaves the question of whether Mr. Barlow is entitled to TPD benefits for the period following his termination. An injured worker may be eligible for TPD benefits when the employer fails to return the employee to work within his restrictions. *Id*. TCP unquestionably failed to return Mr. Barlow to work once it terminated his employment. However, it contends he is not entitled to TPD benefits because he was terminated for refusing to perform his work and this does not constitute a good-faith effort to return to work. *See Kelley v. D&S Residential Holdings*, No. E2011-02392-WC-R3-WC, 2012 Tenn. LEXIS 632, at *28-29 (Tenn. Workers' Comp. Panel Sept. 4, 2012) (an employee has an obligation to make a "good faith effort" to return to work).

The Workers' Compensation Appeals Board addressed the issue of termination while on light duty.

> Even though an employee has a work-related injury for which temporary benefits are payable, the employer is entitled to enforce workplace rules. Thus, an employee's termination due to a violation of a workplace rule may

4

> relieve an employer of its obligation to pay temporary disability benefits if the termination was related to the workplace violation.

*Barrett v. Lithko Contracting, Inc.*, 2016 TN Wrk. Comp. App. Bd. LEXIS 70, at *9 (June 17, 2016)(*citations omitted*).

The workplace "violation" that led to Mr. Barlow's termination was his failure or refusal to complete the inspection and brake job on April 14. When confronted with such a case, the Court must "consider the employer's need to enforce workplace rules and the reasonableness of the contested rules." An employer will not be penalized for enforcing a policy if the court determines "(1) that the actions allegedly precipitating the employee's dismissal qualified as misconduct under established or ordinary workplace rules and/or expectations; and (2) that those actions were, as a factual matter, the true motivation for the dismissal." *Id.* After careful review of all the evidence, the Court concludes that Mr. Barlow's actions did not rise to the level of misconduct and that he made a good-faith effort to return to his job.

Although TCP questioned the specific restrictions that were in place on April 14,[2] no one disputed that Mr. Barlow's authorized medical providers imposed limitations on his use of the left arm and those limitations prevented him from being able to remove tires from a vehicle. In fact, Mr. Isaac admitted that Mr. Barlow required someone to help him remove the tires for an inspection or brake job.

TCP also argued that Mr. Barlow refused even to begin the inspection. However, Mr. Barlow explained that he did so by driving the car but could not put this particular car on the lift without assistance. TCP submitted no testimony or other proof to rebut this statement.

Similarly, Mr. Isaac's testimony that other people were present to help Mr. Barlow with the tires is unsupported by any other proof. He admitted he did not offer to help Mr. Barlow, and other than Mr. Pace, he failed to identify any other employees present at the time. Mr. Barlow, on the other hand, explained that Mr. Pace refused to help because he was busy with customers and his only other coworker was on his lunch break. The Court notes that Mr. Barlow appeared steady, forthcoming, reasonable, and honest, which characteristics, according to the Tennessee Supreme Court, are indicia of reliability. *See Kelly v. Kelly,* 445 S.W.3d 685, 694-695 (Tenn. 2014). Contrasted with the vague and unsubstantiated nature of Mr. Isaac's testimony, and in the absence of any other proof presented by TCP, the Court finds the evidence preponderates against Mr. Isaac's contention that help was available to Mr. Barlow to perform the inspection and brake job.[3] From this, the Court must conclude that TCP terminated Mr. Barlow for refusing to

---

[2] Specifically, it raised the issue of whether Mr. Barlow's restrictions included a prohibition of using vibratory tools.

[3] To the extent Mr. Isaac may have suggested Mr. Barlow's son should have helped him, the Court notes that

perform work outside his restrictions.

This case does not involve an employee who refused to accept an offer of light duty. Mr. Barlow returned to light-duty work as soon as his authorized doctor provided him with temporary restrictions, and he continued to work with no problem as long as TCP accommodated those restrictions. Nor is this a case of misconduct. Mr. Barlow did nothing more than refuse to perform a task that TCP admitted he could not perform without violating his restrictions. Mr. Barlow, therefore, appears likely to prove he is entitled to TPD benefits in the amount of $8,112.81 for the period from April 15, the day after his termination, through August 2, the day before his surgery.

*Penalty*

Mr. Barlow seeks an order imposing a penalty under Tennessee Code Annotated section 50-6-205(b)(3) (2016), which provides:

> [I]f an employer . . . or an employer's insurer fails to pay, or untimely pays, temporary disability benefits within twenty (20) days after the employer has knowledge of any disability that would qualify for benefits under this chapter, a workers' compensation judge shall have the authority to assess . . . a civil penalty in addition to the temporary disability benefits that are due to the employee.

Mr. Barlow may well be entitled to the requested penalty for unpaid disability benefits, but the Court declines to make that determination at this time. The statute specifies that the penalty is only applicable to an employer who has "knowledge of any disability that would qualify for benefits under this chapter." That TCP had knowledge of Mr. Barlow's disability is clear, as he provided TCP with copies of all his medical restrictions. However, because the benefits awarded at this time are based upon a lesser evidentiary standard than that of a final hearing, it would be premature to conclude that Mr. Barlow will, in fact, "qualify for benefits under this chapter." The requested penalty is more properly an issue for the final compensation hearing.

*Attorney Fees*

Finally, Mr. Barlow seeks attorney fees under Tennessee Code Annotated section 50-6-226(d)(1)(B) (2016). This section allows an award of fees and reasonable costs incurred when an employer:

> Wrongfully denies a claim by filing a timely notice of denial, or fails to

---

Cameron was not a TCP employee and that Mr. Barlow had no legal duty to provide his own assistant in order to perform light-duty work.

timely initiate any of the benefits to which the employee is entitled under this chapter . . . if the workers' compensation judge makes a finding that such benefits were owed at an expedited hearing or compensation hearing.

The Appeals Board recently held that this provision does not require determination of fee requests "at an interlocutory stage of the case," although it suggested such a determination might be appropriate in some cases. It noted that "each case must be evaluated based on the particular circumstances presented," although it provided no guidance as to the circumstances that should be considered. *See Andrews v. Yates Servs., LLC*, 2017 TN Wrk. Comp. App. Bd. LEXIS 35, at \*7-8 (May 23, 2017).

Much like his penalty request, Mr. Barlow may have grounds for an eventual award of attorney fees in this case. However, he presented no evidence of why the "particular circumstances" of this case qualify for an immediate award of fees under *Andrews*. The Court, therefore, denies Mr. Barlow's request for fees at this time.

**IT IS, THEREFORE, ORDERED** as follows:

1. The Car People, LLC shall continue to provide Mr. Barlow with medical treatment made reasonably necessary by his March 16, 2017 injury in accordance with Tennessee Code Annotated section 50-6-204.

2. The Car People, LLC shall pay Mr. Barlow temporary total disability benefits in the amount of $1,106.29 for March 17, 2017, and the period of August 3, 2017, through August 16, 2017.

3. The Car People, LLC shall pay Mr. Barlow temporary partial disability benefits in the amount of $8,112.81 for the period of April 15, 2017, through August 2, 2017.

4. Mr. Barlow's requests for the twenty-five percent penalty and attorney fees are deferred until the Compensation Hearing.

5. This matter is set for a Scheduling Hearing on November 28, 2017, at 9:30 a.m. You must call 615-741-2112 or toll-free at 855-874-0473 to participate. Failure to call may result in a determination of the issues without your participation. All conferences are set using Central Time (CT).

6. **Unless interlocutory appeal of the Expedited Hearing Order is filed, compliance with this Order must occur no later than seven business days from the date of entry of this Order as required by Tennessee Code Annotated section 50-6-239(d)(3) (2016). The Insurer or Self-Insured Employer must submit confirmation of compliance with this Order to the Bureau by email to WCCompliance.Program@tn.gov no later than the**

7

**seventh business day after entry of this Order. Failure to submit the necessary confirmation within the period of compliance may result in a penalty assessment for non-compliance.**

7. For questions regarding compliance, please contact the Workers' Compensation Compliance Unit via email WCCompliance.Program@tn.gov.

**ENTERED this the 23rd day of August, 2017.**

_____
**Judge Dale Tipps**
**Court of Workers' Compensation Claims**

## APPENDIX

Exhibits:
1. Affidavit of Troy Barlow
2. Agreed Exhibit List
3. St. Thomas Rutherford ER restrictions
4. Concentra Work Activity Status Reports
5. Payroll printouts of March 24 and March 31
6. Affidavit of Steven Waldron
7. Employee Exit/Termination Sheet
8. Technician Efficiency records
9. Wage Statement
10. Payroll records
11. Transcript of Troy Barlow's recorded statement

Technical record:
1. Petition for Benefit Determination
2. Dispute Certification Notice
3. Request for Expedited Hearing
4. Employer's Pre-Hearing Brief
5. Employee's Pre-Expedited Hearing Statement

# CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the Expedited Hearing Order was sent to the following recipients by the following methods of service on this the 23rd day of August, 2017.

| Name | Certified Mail | Email | Email Address |
| --- | --- | --- | --- |
| R. Steven Waldron | | x | arlenesmith@comcast.net |
| Daniel Howard | | X | Daniel.howard@SA-Trial.com |

_____

**Penny Shrum, Clerk of Court**
**Court of Workers' Compensation Claims**
**WC.CourtClerk@tn.gov**